FREDERICK C. BRANDT, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, November 10, 1910.

1. NEGLIGENCE: Existence of, Depends Upon Circumstances. Negligence is a relative matter and must be determined from the circumstances of the particular case presented.

2. STREET RAILROADS: Negligence: Speed Ordinance. A limitation by ordinance of a rate of speed at which cars may be operated. is not necessarily authority to run the cars in all circumstances to the limit of the speed prescribed.

3. ———: ———: Excessive Speed. Where the particular circumstances of the case present a situation suggesting danger as a usual· thing, the operatives of street cars must conduct themselves with respect to the same as an ordinarily prudent person managing a dangerous agency would conduct himself in the same situation.

4. ———: ———: ———: Speed of Twelve Miles per Hour. Unless particular circumstances suggest some danger as a usual matter, the running of a street car at a rate of speed of twelve miles per hour is lawful, unless restrained by ordinance.

5. ———: Collision at Crossing: Excessive Speed: Jury Question. In an action for injuries sustained in a collision at a street crossing in a city, where people constantly move to and fro, between a vehicle driven by plaintiff and a street car operated by defendant, the circumstances in proof indicating a common use of the crossing, suggesting a possibility of injury more or less present as a usual thing, the question whether it was negligence to operate the car at a speed of twelve miles per hour was a question for the jury, although the maximum speed fixed by ordinance was fifteen miles per hour.

6. ———: ———: ———: Right to Assume Speed was Not Excessive. A person in driving across street car tracks at a public crossing is justified in assuming that street cars will be operated at such place at a rate of speed within that which is usual on a clear track.

7. DAMAGES: Pleading: Loss of Earnings. In an action for personal injuries, the petition averred that "said injuries did prevent, and will continue to prevent, plaintiff from fully exercising and conducting his business as heretofore." The testimony showed that plaintiff owned a coal and ice business, to which he gave his personal attention, and that by reason

of his injuries he was unable to perform the work required by said business, necessitating the sale thereof. *Held,* the averments of the petition were sufficient to authorize a recovery for loss of earnings, since, under the facts stated, plaintiff's earnings were the result of his labors rather than of invested capital.

8. **PLEADING: Sufficiency of Petition: Not Attacked by Demurrer.** The averments of a petition, when not challenged by demurrer, must be interpreted by affording all reasonable inferences and intendments in their favor.

9. **APPELLATE . PRACTICE: Non-Prejudicial Error.** Appellate courts are commanded by the statute not to reverse judgments except for error materially affecting the merits as to the party complaining on appeal.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*Geo. T. Priest, R. E. Blodgett* and *T. E. Francis* for appellant; *Boyle & Priest* of counsel.

(1) The court erred in giving plaintiff's instructions Nos. 1 and 2 for the reason there was no showing to warrant a finding that the operation of the car at twelve miles per hour was an act of negligence, the ordinance introduced in evidence permitting cars to be operated at a speed not in excess of fifteen miles per hour. The law presumes the operation of a car within the ordinance rate, under ordinary circumstances, is not negligent operation. There was no showing in this case that conditions were extraordinary or unusual at the *locus in quo,* and the presumption is, they were not; and hence it follows as a conclusion of law that the operation of the car at a speed three miles per hour less than the maximum rate permitted by law was not negligent operation. Higgins v. Railroad, 197 Mo. 300; Theobald v. Transit Co., 191 Mo. 432; Petty v. Railroad, 179 Mo. 674. (2) Instruction No. 3, defining the measure of damages, given at plaintiff's request, is erroneous, for the reason it authorized the jury to award

153 App—2

plaintiff damages for the loss of the earnings of his labor, in the absence of any averment in the petition counting on this element of special damages, and in the absence of any evidence tending to show what plaintiff's earning capacity was prior to his alleged injury or what loss of earnings he sustained. Duke v. Railroad, 99 Mo. 347; Slaughter v. Railroad, 116 Mo. 269; Davidson v. Transit Co., 211 Mo. 320; Keen v. Railroad, 129 Mo. App. 301. (3) The verdict is excessive because presumptively it erroneously includes an award of damages for loss of earnings. Nelson v. Railroad, 113 Mo. App. 663; Morris v. Railroad, 144 Mo. 508.

*Collins & Chappell, George W. Funke* and *E. V. Selleck* for respondent.

(1) While the effect of the ordinance read by defendant was to make a speed of more than fifteen miles per hour negligence per se, it by no means follows that a less rate of speed was not negligent. Had the motorman on defendant's car vigilantly looked ahead, he would have seen that plaintiff's wagon was proceeding south on Florissant avenue, and known that it had an equal right to the street with defendant's car, and his duty to so proceed as to have kept his car within a rate of speed that would have enabled him to stop his car at any time that plaintiff should have turned into defendant's tracks. (2) The instruction on the measure of damages was not erroneous. Plaintiff established that he was in the coal and ice business, drove his own wagon delivering ice and coal, was making a good living for himself and his family, and that after and by reason of the accident he was unable to carry on said business and sold his business and has been unable to do anything since. Mabray v. Gravel Company, 92 Mo. App. 596.

NORTONI, J.—This is a suit for damages accrued to plaintiff through the alleged negligence of defend-

ant. Plaintiff recovered, and defendant prosecutes the appeal.

Plaintiff is the proprietor of an ice and coal business which he conducts in a small way, in person, by delivering those commodities from house to house. At the time of his injury, he was engaged in delivering ice in a one-horse wagon about 1 o'clock in the afternoon. Defendant's street car collided with plaintiff's wagon while he was in the act of crossing its south-bound track on Florissant avenue and inflicted serious and permanent injuries upon him. It appears Florissant avenue runs north and south along and adjacent to the west side of O'Fallon Park. Defendant maintains a double street car track in this street; the south-bound track being the one farthest west, and the north-bound track that farthest east. Plaintiff, with his horse and wagon, came from the west on Redbud avenue and into Florissant avenue at the intersection of those streets. After coming upon Florissant avenue, he drove south along the west side of that street for about 330 feet with the purpose to go eastward from Florissant on Harris avenue, and this, of course, involved crossing the car tracks. The evidence tends to prove that, just prior to turning southeast across defendant's car tracks to the intersection of Harris avenue, plaintiff looked to the northward and observed defendant's car standing on Florissant at the intersection of Redbud avenue as though it was either receiving or discharging passengers at that point. As the car then stood 330 feet north of Harris avenue, plaintiff guided his horse to the southeast across the car track intending to pass to the eastward on Harris avenue. He says just as his horse was in the act of passing upon the south-bound track he looked a second time and observed the car approaching him about seventy-five feet distant at a very high rate of speed. Plaintiff whipped his horse

and endeavored to escape, but the approaching car collided with the rear wheel of his wagon and occasioned the several injuries complained of. The petition contains three allegations of negligence. The first is to the effect that defendant's motorman in charge of the car ran the same at a great and unlawful rate of speed; the second allegation is to the effect that the motorman in charge of the car did not observe due care in looking out for vehicles upon Florissant avenue; and the third allegation is that the motorman neglected to make use of the appliances at his command in time to prevent plaintiff's injury when, by exercising ordinary care to that end, he might have avoided the collision. The third and last specification of negligence the court withdrew from the jury by instruction, as, in its opinion, the evidence failed to support it.

The court submitted the case to the jury, however, on the first two specifications of negligence. The jury were instructed for plaintiff, substantially, that if they found the street car was operated at a great and dangerous rate of speed under all of the circumstances of the case, or that the motorman operated the car without exercising ordinary care to discover vehicles on the track and in danger, then the finding should be for plaintiff if it appeared plaintiff's injury occurred directly as a result of defendant's failure in either respect. Plaintiff's first instruction referred to is as follows: "The court instructs the jury that if they believe and find from the evidence in this case that on the 3d day of October, 1908, the defendant was engaged in operating a line of street railway and cars along and over Florissant avenue in the city of St. Louis, and that said Florissant avenue was at said time an open public street of the city of St. Louis, and that on said date the plaintiff drove an ice wagon on said Florissant avenue near its intersection with Harris avenue in said city, and that, while plaintiff was driving on said Florissant avenue and attempting to cross the same at said

time and place, one of defendant's cars on said Florissant avenue in charge of defendant's motorman then and there ran against plaintiff's said wagon, upsetting the same, thereby inflicting any of the injuries detailed in the evidence, and, if the jury further believe and find from the evidence that the motorman operating said car striking plaintiff's wagon at said time and place ran said car at a rate of speed great and dangerous under all the circumstances of the case as detailed in the evidence, or that said motorman at said time and place ran said car without exercising ordinary care to discover vehicles upon said street in danger from said car, and that said collision with plaintiff's wagon directly resulted from said motorman's failure to use ordinary care in any or all of the particulars above stated, and that plaintiff himself at said time and place was exercising reasonable and ordinary care for his own safety, then your verdict must be for the plaintiff."

In so far as this instruction submitted to the jury the question of the motorman operating the car at a great and dangerous rate of speed under the circumstances of the case as a predicate of liability, it is criticised, for it is said there is not a word in proof tending to show the rate of speed shown in and of itself was a breach of duty on the part of defendant. A witness for plaintiff who was present at the time and qualified as an ex-motorman said the car was being operated just prior to the injury at twelve miles per hour. In respect of this matter, the negligence relied upon for a recovery is a breach of defendant's common-law duty, for in no manner does the case proceed as for a violation of the speed ordinance. Indeed, it was expressly stated on the trial for plaintiff that he relied upon negligence at common law as to this matter, for his proof was insufficient to disclose a breach of the ordinance. The city ordinance in evidence touching the speed of cars at the point in question inhibits their operation at a rate of speed beyond fifteen miles an hour, only.

It is suggested for defendant that, as the law presumes negligence when a car is shown to have been operated at a speed in excess of that prescribed in an ordinance, so it should be presumed there is no negligence on the part of defendant when it conclusively appears the car was operated at a rate of speed considerably within the ordinance limit. It is unnecessary to seriously consider the suggestion as to presumptions, for negligence is a relative matter and must be determined in the circumstances of the particular case presented for review. It is sufficient to say that a limitation by ordinance of a rate of speed at which cars may be operated is not necessarily authority to run the cars in all circumstances to the limit of speed prescribed. [Quincy Horse Ry., etc., Co. v. Gnuse, 38 Ill. App. 212; Nellis, Street Railroad Accident Law, 178.] Indeed, it may be even aside from the ordinance, the operation of a car at a much less rate of speed than that referred to will operate a negligent breach of duty on the part of defendant, if the facts and circumstances in proof disclose a situation fraught with great possibilities of danger to the public. [Van Natta v. People's Street Ry., etc., Co., 133 Mo. 13, 34 S. W. 505.] There can be no doubt that where the particular circumstances of the case present a situation suggesting danger as a usual thing, those operating the street car must conduct themselves with respect to the same as would an ordinarily prudent person managing a dangerous agency in the same situation. For instance, if it appears a multitude is accustomed to assemble on or about a car track in a great city, then the obligation of ordinary care for the safety of those thus usually assembled suggests that the car should be run at a very moderate rate of speed and under complete control while passing such point. So it is in the present case, though the evidence conclusively shows the car was not operated to exceed twelve miles an hour, an element of liability may appear against defendant notwithstanding the ordinance, if other facts

and circumstances in proof suggest such a rate of speed to have been careless. But it is said the case is utterly devoid of proof in respect of this matter. It may be conceded the authorities all go to the effect that, unless the particular circumstances in proof suggest some danger as a usual matter, the rate of speed here shown is lawful unless restrained by ordinance. The following cases are in point: Higgins v. St. Louis & S. R. Co., 197 Mo. 300, 315, 316, 95 S. W. 863; Petty v. St. Louis & M. R. R. Co., 179 Mo. 666, 78 S. W. 1003; Theobald v. St. Louis Transit Co., 191 Mo. 395, 432, 90 S. W. 354; Nellis, Street Railroad Accident Law, 173.

There can be no doubt, had the instruction submitted the matter of unlawful speed conjunctively with that pertaining to the omission of the motorman to exercise ordinary care for plaintiff's safety, it would have been entirely proper; but, having submitted the matter of speed as a single predicate of liability, it may not be sustained unless there is something in the circumstances of the case from which the jury may reasonably infer that a rate of speed at twelve miles per hour was a breach of the obligation to exercise ordinary care as a usual thing at the point in question. When the facts are scrutinized, we believe there is sufficient in the case to render the question one for the jury. The fact that the motorman might, by exercising ordinary care, have seen plaintiff driving down the street and headed toward Harris avenue, should be put aside for the reason this clause of the instruction does not incorporate it as a matter to be considered with respect to defendant's liability. After setting this out of view entirely, the feature of the instruction under discussion is to be viewed solely in the light of the facts and circumstances which attended the situation as a usual thing and of which both plaintiff and those operating the street car are deemed to have had knowledge. It seems but fair to view all of that portion of Florissant avenue between Redbud avenue and Harris avenue as akin to a public

crossing, for it is to be remembered that O'Fallon Park lies on the east side of Florissant avenue, and those desiring to go east from Redbud avenue must travel south 330 feet in Florissant to the intersection of Harris avenue, which proceeds eastward on the south line of the park. In other words, Redbud avenue intercepts Florissant avenue immediately adjacent to the park, and all persons traveling east on Redbud avenue are required to turn and drive 330 feet to the southward and across the tracks in Florissant avenue to the end of reaching a street, Harris avenue, on which they may proceed on their journey to the eastward. Besides, these streets are public thoroughfares of a great city where people constantly move to and fro. In this situation, it appears those operating the street cars in Florissant avenue at this point should anticipate persons were usually using the portion of Florissant avenue involved as a crossing and operate the cars accordingly. In other words, we believe it was competent, solely in view of the circumstances suggested, which sufficiently appear to obtain as a usual condition, to submit the matter to the jury as a predicate of liability if it found that a speed of twelve miles per hour was dangerous and negligent at the place in question. The plaintiff was justified in assuming the defendant would operate its cars on this portion of the street at a rate of speed within that which is usual to a clear track, for it should anticipate persons crossing there. If there be circumstances in proof indicating a common use of the portion of the street mentioned, which suggest a possibility of injury more or less present as a usual thing, the question as to whether the rate of speed at twelve miles per hour is negligent is one for the jury, aside from the ordinance. [Nellis, Street Railroad Accident Law, 278, 279.]

Among other things, the instruction on the measure of damages submitted plaintiff's loss of earnings as a proper element for consideration. It is argued this

was error for the reason there was no averment in the petition to the effect that plaintiff's earnings were impaired by his injury, and further that there was no evidence as to what plaintiff's earnings were prior to the injury. The latter suggestion is an error as to the fact, for the evidence discloses plaintiff's earnings were thirty dollars per week prior to and at the time of his injury. The allegation of the petition is somewhat indefinite as to this matter, but we believe it to be sufficient. It is averred in the petition "said injuries did prevent, and will continue to prevent, plaintiff from fully exercising and conducting his business as heretofore." If it appeared plaintiff was working for a salary, this rather indefinite allegation might be regarded as insufficient, as it would not follow necessarily that his salary ceased or was diminished because he was prevented from fully exercising or conducting his business as theretofore. Such was the case of Keen v. St. Louis, etc., R. Co., 129 Mo. App. 301, 305, 108 S. W. 1125. It appears here that plaintiff owned a coal and ice business to which he gave his personal attention by delivering ice and coal to his customers. The testimony is that, besides being confined to the hospital for several weeks because of his broken arm and other injuries, he was rendered wholly unable to perform the duties of cutting ice and shoveling coal. Because of this he finally sold his business to another. But it is urged the chief purpose of pleading is to convey notice to the adverse party of the particulars as to which the damage is sought. In view of this, it is said defendant is not sufficiently advised by the allegation that the injuries prevented, and will continue to prevent, plaintiff from conducting his business as theretofore that he sought to recover personal earnings. The argument might be valid in some cases, but is without force here, for the present petition on its face sets forth facts sufficient to advise defendant about the whole matter and, furthermore, the proof is complete. It is averred in the peti-

tion, identically as the proofs show, that plaintiff owned and conducted a small ice and coal business, which occupied him personally in making deliveries from house to house and place to place. The petition reveals, too, that plaintiff was in the very act of driving his horse and wagon in making deliveries of ice at the time of his injury. The averments of a petition, when not challenged by demurrer, as in this case, must be interpreted by affording all reasonable inferences and intendments in their favor. When so considered, in connection with all of the facts set forth, the averment that plaintiff's injuries prevented, and will continue to prevent, him from fully exercising and conducting his business as theretofore, is sufficient to authorize a recovery for loss of earnings; for his earnings in such case are the result of his labors rather than of invested capital. Indeed, if one accustomed to prosecuting such a business by his own efforts, which yields him thirty dollars per week, is disabled from further performing his duties in respect of such business, the reasonable inference is that the loss entailed is that of his personal earnings rather than that of invested capital. At any rate, it sufficiently appears on the whole case that the capital of plaintiff's business was his personal effort in conducting it and its yield was from that source.

We are commanded by the statute not to reverse judgments except for error materially affecting the merits as to the party complaining on appeal. In view of this and what has been said, we believe the court did not err in permitting a recovery for a loss of earnings in the circumstances of the case. For an authority in point, see Thomas v. Union Ry. Co., 18 App. Div. (N. Y.) 185. See, also, 8 Am. and Eng. Ency. Law (2 Ed.), 654; Mabrey v. Cape Girardeau & Gravel Road Co., 92 Mo. App. 596. The other questions do not merit discussion. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.